UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

                                  Plaintiff,

    -against-                                              1:22-CV-00704 (LEK/ATB)

SHADOWBROOK FARM LLC,

                                  Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

        Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") has brought this action for alleged copyright infringement against defendant Shadowbrook Farm LLC ("Defendant") on June 3, 2022. Dkt. No. 1 ("Complaint"). After Defendant failed to answer, Plaintiff filed a request for entry of default on August 31, 2022. Dkt. No. 7. The Clerk executed a certificate of default on September 1, 2022. Dkt. No. 8. Presently before the Court is Plaintiff's motion for default judgment, filed on November 29, 2022. Dkt. No. 14 ("Motion"). For the reasons that follow, Plaintiff's Motion is granted.

**II.    BACKGROUND**

        Plaintiff is a company that licenses professional photographs for the food industry. Compl. ¶ 6. Plaintiff operates a subscription service whereby subscribers pay a monthly fee of $999.00 to gain access to tens of thousands of food industry-related photographs. Id. ¶¶ 7–8. Subscribers cannot license or purchase individual photographs; instead, subscribers may only gain access to these photographs by paying Plaintiff's monthly fee. Id. ¶ 9. Plaintiff requires that subscribers commit to a minimum 12-month subscription. Mot. at 2. In other words, a subscriber

must pay a minimum of $11,988.00 (12 months of access at $999.00 per month) to use Plaintiff's service. Id. Once the customer pays the subscription fee, the customer receives a "limited, non-transferable license for use of any photograph by the customer only." Id. at 3. The license terms make clear, however, that Plaintiff retains its copyright ownership of all images and "that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity." Id.

Defendant is a farm and online store that sells meat and other products. Compl. ¶ 14. According to the Complaint, Defendant is not, and has never been, one of Plaintiff's customers. Id. at ¶ 17. Defendant has never subscribed to Plaintiff's service, nor has Defendant paid the $999.00 monthly fee to Plaintiff, nor has Defendant ever contacted Plaintiff to seek permission to use any of Plaintiff's images. Id. Nevertheless, Defendant published one of Plaintiff's copyrighted photographs—an image titled "ChuckSteakRawFSHC1403.jpg" (the "Work")—on Defendant's website. Id. ¶¶ 11, 16. That photograph was an image of a cut of raw meat that Defendant used to market Defendant's "Chuck Steak" product. Id. ¶ 16.

Plaintiff states that it discovered Defendant's unauthorized use of the Work in September 2020. Mot. at 5. Plaintiff sent an infringement notice to Defendant, to which Defendant did not respond. Id. Plaintiff then retained counsel. Id. Counsel sent an infringement notice and follow-up email, and then made "several phone calls in an attempt to negotiate a reasonable license for the use of the Work." Id. Defendant provided no response to any of these attempted outreaches. Id. At one point, Plaintiff's counsel was able to speak to an attorney who purported to represent Defendant, but Defendant's counsel did not respond to any follow-up communications. Id. at 5–6.

The Complaint alleges copyright infringement and seeks: (1) injunctive relief; (2) actual damages, or alternatively, statutory damages; (3) attorney's fees; and (4) costs of collection. See Compl. Plaintiff's Motion now moves for: (1) judgment against Defendants on all counts set forth in the Complaint; (2) statutory damages of $23,976.00; (3) legal fees totaling $2,583.25; (4) costs of $512.00; and (5) a permanent injunction prohibiting Defendants from infringing on Plaintiff's copyright or reproducing Plaintiff's works. See Dkt. No. 14-4 ("Proposed Order"). To date, Defendant has not appeared in this action or answered Plaintiff's claims. See generally Docket.

## III.   LEGAL STANDARD

After the clerk has filed an entry of default against a party that has failed to plead or otherwise defend, a court may enter default judgment upon application of the opposing party. See Fed. R. Civ. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). However, default judgment is ordinarily justified when a party fails to respond after having received proper notice. See Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). After an entry of default has been entered, all the well-pleaded allegations in a complaint pertaining to liability are deemed true. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default).

However, a court cannot take allegations in a complaint regarding damages as true. Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 154–55 (2d Cir. 1999). After establishing liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic, 109 F.3d at 111. To determine damages in the context of a

default judgment, "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Serv., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Ne. King Constr. Co., No. 06-CV-0806, 2009 WL 1706586, at *1 (N.D.N.Y. June 16, 2009).

### IV. DISCUSSION

To secure a default judgment, Plaintiff must establish grounds both for Defendant's liability and the remedies Plaintiff seeks. Thus, to succeed on all parts of its motion, Plaintiff must establish: (1) Defendant's liability for a copyright infringement; (2) Plaintiff's entitlement to damages; (3) Plaintiff's entitlement to attorneys' fees and costs; and (4) Plaintiff's entitlement to injunctive relief.

#### A. Liability

##### 1. Copyright Infringement

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

The first element of copyright infringement—ownership of a valid copyright—can be proven via a certificate of registration, which "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); see also Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992) ("The Copyright Act makes a certificate of registration from

the U.S. Register of Copyrights *prima facie* evidence of the valid ownership of a copyright."). Plaintiff has provided its certificate of registration for the Work from the Register of Copyrights. Dkt. No. 14-5. Because this certificate constitutes *prima facie* evidence of a valid copyright, Plaintiff has satisfied the ownership element of a copyright infringement claim.

To prove the second element of copyright infringement, "a plaintiff must establish that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's" work. Clanton, 556 F. Supp. 3d at 327. "Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial evidence that the defendants had access to the plaintiff's work." Id. at 327–328. "In applying the so-called ordinary observer test, we ask whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 66 (2d Cir. 2010) (quotations and citations omitted).

Here, the Complaint provides screenshots of both the Work itself and of Defendant's website purportedly using the Work. Compl. ¶¶ 11, 16. The images are unmistakably identical. Any reasonable observer would find that Defendant's website made use of an exact copy of the Work, thus meeting both the "actually copied" and "substantial similarity" tests. Clanton, 556 F. Supp. 3d at 327. Plaintiff has thus satisfied the second element of copyright infringement.

Having sufficiently met both elements of a copyright claim, the Court finds that Defendant is liable for a claim of copyright infringement.

    2. *Willfulness*

In alleging a copyright infringement, plaintiffs may argue that the defendant not only illegally violated a copyright, but also that the defendant engaged in a *willful* violation. See 17

U.S.C. § 504(c)(2). The Copyright Act specifies that a finding of willfulness allows a reviewing court to grant greater damages to the plaintiff. See id. ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."). "To prove 'willfulness,' a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 197 (S.D.N.Y. 2016) (citation and quotations omitted). "A plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001) (cleaned up).

Here, Plaintiff personally sent a formal notice of infringement to Defendant, and Plaintiff's counsel sent an additional notice of infringement, to stop the infringing activity. See supra Part II. Plaintiff's counsel attempted to communicate multiple times with Defendant, and Plaintiff's counsel did in fact communicate with Defendant's purported counsel. Id. In light of these multiple outreaches, it is unlikely that Defendant was unaware that it was illegally using a copyrighted work. The Court thus finds that Defendant is liable for willfulness.

### B. Damages

The Copyright Act states that a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." 17 U.S.C. § 504(b). The Copyright Act also "provides that a copyright owner may elect to receive statutory damages, rather than actual damages, any time before final judgment is rendered." Agence France Presse v. Morel, 934 F. Supp. 2d 584, 587 (S.D.N.Y. 2013). "Specifically, a copyright owner may receive 'an award of statutory damages for all infringements involved in the action, with respect

6

to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.' . . . The maximum award of statutory damages may be increased from $30,000 to $150,000 on a showing of willfulness." Agence France Presse v. Morel, 934 F. Supp. 2d 547, 579 (S.D.N.Y. 2013) (quoting 17 U.S.C. § 504(c)). Here, Plaintiff elects for statutory damages.

Courts have significant discretion in awarding the amount of statutory damages. Ontel Prod. Corp. v. Amico Int'l Corp., No. 07-CV 7356, 2008 WL 4200164 (S.D.N.Y. Aug. 19, 2008), report and recommendation adopted, No. 07-CV-7356, 2008 WL 4298504 (S.D.N.Y. Sept. 11, 2008) ("Within these statutory limits, courts have broad discretion in awarding statutory damages. Indeed, judges may award statutory damages in amounts that greatly exceed the actual damages shown to compensate copyright owners for past infringement and deter future infringement." (citations and quotations omitted)). In awarding statutory damages, courts must "effectuate the dual purposes of the Copyright Act—compensation of copyright owners and deterrence of potential infringers." Manno v. Tennessee Prod. Ctr., Inc., 657 F. Supp. 2d 425, 429 (S.D.N.Y. 2009) (citations and quotations omitted).

At the outset, the Court notes a number of other district courts—including courts in this Circuit—have heard virtually identical cases. Each of those cases involve a claim of copyright infringement by this Plaintiff, where each defendant was not a subscriber to Plaintiff's service but nevertheless impermissibly used one of Plaintiff's photographs on the defendant's website. In each case, Plaintiff filed a motion for default judgment on the same grounds as this case. And in each case, the court granted Plaintiff's motion for default judgment, awarding damages and issuing a permanent injunction. See, e.g., Prepared Food Photos, Inc. v. Chicago-Mkt.-

distributors, Inc., No. 22-CV-03299, 2023 WL 3570673 (D. Colo. Apr. 18, 2023), report and recommendation adopted, No. 22-CV-03299, 2023 WL 3568164 (D. Colo. May 19, 2023) (finding in favor of Plaintiff's default judgment motion where a defendant Polish food supplier impermissibly used Plaintiff's copyrighted photo of a meat plate on defendant's website); Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 22-CV-07953, 2023 WL 2955298 (S.D.N.Y. Apr. 14, 2023) (finding in favor of Plaintiff's default judgment motion where a defendant restaurant impermissibly used Plaintiff's copyrighted photo of prime rib on defendant's website); Prepared Food Photos, Inc. v. Silver Star of Brook., 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (finding in favor of Plaintiff's default judgment motion where a defendant Italian food distributor impermissibly used Plaintiff's copyrighted photo of lasagna on defendant's website); Prepared Food Photos, Inc. v. Fat Daddy Co., 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (finding in favor of Plaintiff's default judgment motion where a defendant whole sale food distributor impermissibly used Plaintiff's copyrighted photo of chicken tenders on defendant's website); Prepared Food Photos, Inc. v. 193 Corp., 2022 U.S. Dist. LEXIS 205690, at *13–14 (N.D. Ill. Sep. 21, 2022) (finding in favor of Plaintiff's default judgment motion where a defendant restaurant impermissibly used Plaintiff's copyrighted photo of chicken wings on defendant's website); Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649 (S.D. Fla. Mar. 22, 2022) (finding in favor of Plaintiff's default judgment motion where a defendant wholesale butcher shop impermissibly used Plaintiff's copyrighted photo of London broil on defendant's website).

  These cases are instructive. The virtually identical fact patterns and outcomes show a pattern of consistency in treating copyright claims with this Plaintiff. These cases have also

outlined that there are unique circumstances involving this Plaintiff and calculating damages. As one court has noted:

> First, the circumstances surrounding the infringement are somewhat unique in that Defendant infringed on a work that part of a larger collection and that is not typically licensed independent of that collection. The value of Plaintiff's library derives in large part from its semi-exclusive nature, meaning that every instance of unauthorized copying has some degree of impact on the value of the library as a whole. Plaintiff devotes considerable effort to maintaining that exclusivity, including by retaining multiple employees whose jobs solely consist of identifying infringers, and the curation of a specific clientele so that Plaintiff can assure its clients that their competitors will not utilize the same photographs. Plaintiff does not offer subscriptions on any basis other than annual so as to avoid situations where clients purchase the entire library at one month's cost and then terminate the subscription service. Nor does Plaintiff license individual photographs, as it determined that doing so diminishes the value of Plaintiff's subscription model. It is therefore not easy to discern the value of an individual photograph, and the value of each individual photograph cannot be easily divorced from the library as a whole.
>
> Further, Defendant's inaction and refusal to participate in this lawsuit has stymied Plaintiff's ability to fully and accurately assess its actual damages. For example, Plaintiff cannot discover any profits obtained by Defendant as a result of its infringement, which would have been recoverable as actual damages. It also prevents Plaintiff from knowing the full extent of Defendant's unauthorized use . . .

Patriot Fine Foods, 2022 U.S. Dist. LEXIS 205649, at *11–12 (citations omitted).

With these challenges in mind, Plaintiff urges the Court to adopt the damages model that many of the aforementioned courts have undertaken: take the cost of a one-year subscription to Plaintiff's service ($11,988.00) and double it (totaling $23,976.00). See, e.g., Trip Restaurant, 2023 WL 2955298, at *7 (using $23,976.00 as the baseline calculation for damages, and then multiplying the baseline by the number of years of the defendant's violation); Silver Star of Brook, 2023 U.S. Dist. LEXIS 22037, at *19 (same approach); Fat Daddy Co., 2022 U.S. Dist. LEXIS 216004, at *18 (finding a statutory damages award of $23,976.00 appropriate); Patriot

9

Fine Foods, 2022 U.S. Dist. LEXIS 205649, at *13 ("I find that Plaintiff is entitled to statutory damages in the amount of $23,976.00.").

The Court finds Plaintiff's proposed damages model persuasive. Defendant could only permissibly gain access to the Work if Defendant purchased a one-year subscription to Plaintiff's website. See supra Part II. Defendant could not purchase or license the Work individually, nor could Defendant purchase less than a one-year subscription. Id. Thus, by impermissibly using Plaintiff's copyrighted work and failing to pay the one-year subscription, Defendant cost Plaintiff $11,988.00 in earnings.

Courts must not only consider the actual harm incurred to copyright plaintiffs, but also "deterrence of potential infringers." Manno, 657 F. Supp. 2d at 429 (quotations and citations omitted). This element of deterrence has played a role in the decision by other courts to double the $11,988.00 amount. As one court has noted:

> Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use . . . Further, as described above, Defendant's conduct was willful. And deterrence of future violations is a legitimate consideration because defendants must not be able to sneer in the face of copyright owners and copyright laws. The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods, 2022 U.S. Dist. LEXIS 205649, at *12–13.

The same reasoning is equally applicable here. Defendant has not participated in this case, making it impossible to conduct discovery and calculate the full extent of Plaintiff's damages. Furthermore, given that Defendant used Plaintiff's copyrighted work to market Defendant's products, it is likely that Defendant profited from Defendant's violation. See supra Part II. Finally, the Court must consider ways to deter future copyright violations. A doubling of

10

the $11,988.00 amount would help to deter future violations as it would warn of the high costs that face copyright infringers.

The Court therefore adopts Plaintiff's recommendation of $23,976.00 in statutory damages.

### C. Costs and Attorneys' Fees

Plaintiffs in copyright suits may pursue reasonable attorneys' fees. 17 U.S.C. § 505 provides that "the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs."

Courts in the Second Circuit employ a "presumptively reasonable fee" standard to determine the amount to award as attorneys' fees. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In order to determine what is a presumptively reasonable fee, the court assesses "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a reasonable number of hours expended by counsel. McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010).

Plaintiff seeks a total of $2,071.25 in attorneys' fees charged by the law firm Copycat Legal PLLC. In support of this request, Plaintiff has submitted detailed billing records, as well as declarations from Plaintiff's attorney outlining his experience and credentials. See Dkt. No. 14-2.

The Court has reviewed the documentation submitted by Plaintiff and finds that all time billed is supported by contemporaneous time records that show—for each attorney—the date or dates worked, the hours expended, and the nature of the tasks completed. See id. The Court has undertaken an independent review of the record and considered all relevant factors and finds that

11

the time billed by Plaintiff's attorneys on this matter is reasonable. Plaintiff's attorney and paralegal have expended a reasonable amount of time on this case—a total of five hours—and individual entries appear to be a reasonable calculation of the attorney's time and effort. Id. at 9. Further, the hourly rates requested by Plaintiff's attorneys appear to be reasonable. Plaintiff's attorney charges $450 per hour, id., which other courts in this Circuit have found reasonable, see, e.g., Farrington v. Jewish Voice Inc., No. 21-CV-1575, 2022 U.S. Dist. LEXIS 21812, at *15 (E.D.N.Y. Feb. 7, 2022) ("In copyright cases, courts in this district have approved rates between $350 and $500."); Bass v. Diversity Inc. Media, No. 19-CV-2261, 2020 U.S. Dist. LEXIS 93318, at *14 (S.D.N.Y. May 28, 2020) ("A review of cases in this District and in the Eastern District of New York suggests that courts have approved associate rates of $350 and up to $500 for partners in copyright cases."). Accordingly, the Court grants attorneys' fees in the amount of $2,071.25.

Plaintiff also seek costs in the amount of $512.00 expended by its attorneys. These costs include the complaint filing fee and process server. Dkt. No. 14-2 at 9. After reviewing the record, the Court finds that these amounts are warranted and therefore awards Plaintiffs $512.00 in costs and disbursements.

**D. Injunctive Relief**

"[A] court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp., 749 F. Supp. 2d 81, 93 (E.D.N.Y. 2010) (citations and quotations omitted). Courts are permitted to issue permanent injunctions in copyright actions, as federal copyright law states that "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions

on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Under this statutory standard, a plaintiff must prove two elements: "1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits." Realsongs, 749 F. Supp. 2d at 93.

With regards to the "irreparable harm" element, "irreparable harm is presumed where a party has established a *prima facie* case of copyright infringement." Id. Additionally, courts have noted that when a copyright defendant has "failed to respond to . . . communications" from a plaintiff and have "fail[ed] to participate" in a lawsuit, that constitutes further evidence that irreparable harm may result absent a permanent injunction. Id. Considering Plaintiff has made a *prima facie* case of copyright infringement, and Defendant has failed to respond to communications or participate in this suit, Plaintiffs have met the irreparable harm element. With regards to the "actual success on the merits" element, Plaintiffs have successfully established a case for copyright infringement as discussed in supra Part IV.A.1. Plaintiffs have thus proven actual success on the merits.

Accordingly, this Court will enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Default Judgment (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's request for a permanent injunction is **GRANTED**; and it is further

**ORDERED**, that Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff;

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant in the sum of $23,976.00; and it is further

**ORDERED**, that Plaintiff's request for $2,071.25 in attorneys' fees and $512.00 costs is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:　　June 27, 2023
　　　　　　Albany, New York

_/s/ Lawrence E. Kahn_
LAWRENCE E. KAHN
United States District Judge